UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| IMADELDIN KHAIR, | : | |
| | : | Civ. No. 21-20710 (RBK) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| STEVIE KNIGHT,[1] | : | |
| | : | |
| Respondent. | : | |

**ROBERT B. KUGLER, U.S.D.J.**

I.   **INTRODUCTION**

Petitioner Imadeldin Khair, a federal inmate incarcerated at FCI Fort Dix in New Jersey, is serving a 216-month sentence for health care fraud, money laundering, and related crimes. ECF No. 5-4 at 4. Before the Court is his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his disciplinary proceedings, which resulted in, *inter alia*, the loss of good-conduct time, after he was found in possession of a cellular telephone. ECF No. 1. For the reasons below, the petition will be denied.

II.   **BACKGROUND**

A.   **Factual Background**

On January 30, 2017, Petitioner was sentenced in the United States District Court for the District of New Jersey for healthcare fraud, money laundering, and related offenses to an aggregate term of 216 months of incarceration. *See* ECF No. 5-4 at 4; *United States v. Khair*, 15-cr-404 (D.N.J.). Petitioner is scheduled to be released from federal custody in February 2031.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Stevie Knight, the Warden of Federal Correctional Institution Fort Dix, is automatically substituted for former wardens David Ortiz and Lamine N'Dyiaye.

*See* https://www.bop.gov/inmateloc/ (search "Imadeldin Awad Khair"; last visited January 4, 2023).

The disciplinary sanctions against Petitioner arose from the following facts. On June 15, 2020, Petitioner was issued an incident report charging him with possession of a cellular telephone, which the report described as a violation of "Code 108"—"Possession of a Hazardous Tool." ECF No. 5-2 at 2, 8. The report described Petitioner's alleged violation as follows:

> On June 14, 2020, I, Officer M. Krzewska, worked as West Compound Officer. At approximately 3:00 P.M. Compound Officers, along with administrative staff, conducted a random search of 3rd floor areas in Unit 5802. During the search, Deputy Captain and I approached Cell 322. Upon entry to cell 322, we observed one present inmate, later identified as Khair, Imadeldin Reg. No. 66926-050, resting in bed 6 Lower. We ordered inmate Khair to clear the cell which he did. During the search of locker 6 Lower, later identified as locker assigned to inmate Khair, I discovered one (1) Black in Color Samsung Smartphone magnetized to the bottom of the locker. I identified the locker's owner by multiple prescription medications I found inside of the locker 6 Lower during the search. The locker was also verified as being assigned to inmate Khair by utilizing Sentry and the Unit's Bed Book Roster.
>
> Inmates are prohibited to possess portable telephones or anything unauthorized, and not issued through regular channels. As per page 40 of the inmate's A&O handbook it states it is the inmate's responsibility to keep their area free of all contraband.

*Id.* at 8. The report indicates that a copy was delivered to Petitioner on June 15, 2020, at 12:05 p.m. *Id*.

Thereafter, a lieutenant identified in the records as "A. Gillespie" investigated the incident. *Id.* at 9. The report indicates that he advised Petitioner of his rights and Petitioner acknowledged he understood them. *Id*. Petitioner also stated that "this was not his phone, he has be [sic] found with a phone before but this was not his, he took responsibility for that one." *Id*. Petitioner did not request a witness. *Id*. Lt. Gillespie referred the matter to a Unit Discipline Committee ("UDC"). *Id*.

2

Petitioner appeared before the UDC on June 17, 2020, and made the following comments to the UDC: "I was sick that day. I have no idea who's [sic] phone that is. I've never had or used [a] phone for over two years. It was under the locker not in it." *Id*. at 8. "Due to the level of the offense," the UDC referred the matter to a discipline hearing officer ("DHO") for further review. *Id*.

Also on June 17, 2020, Petitioner signed a form titled "Notice of Discipline Hearing Before the (DHO)" indicating that (1) he did not wish to have a staff representative and (2) he wished to call a witness who would testify that "when they left the room [Petitioner] was asleep." *Id.* at 7 (capitalization omitted). Petitioner also signed a form titled "Inmate Rights at Discipline Hearing" acknowledging that he had been advised of various rights before the DHO, including: (1) the right to receive a written copy of the charges at least twenty-four (24) hours prior to the hearing; (2) the right to have a staff member who is reasonably available to serve as a staff representative at the hearing; (3) the right to call witnesses, present witness statements, and introduce documentary evidence, "provided institutional safety would not be jeopardized"; (4) the right to present a statement or to remain silent; (5) the right to be present throughout the disciplinary hearing; (6) the right to receive written notice of the DHO's decision and the facts supporting the decision; and (7) the right to appeal. *Id.* at 6.

The record indicates that Petitioner appeared before the DHO on June 30, 2020. *Id.* at 2. He was advised of his due process rights, stated he understood them, and provided the following statement: "I am not guilty[.] I was sleep [sic] and sick." *Id.* at 2. Petitioner did not cite procedural issues nor did he provide documentary evidence. *Id.* at 2, 4. Petitioner's witness appeared at the hearing and stated: "I was there[.] He was asleep." *Id.*

3

The DHO determined that Petitioner failed to "present sufficient evidence to refute the charge," and found, "based on the greater weight of the evidence," that Petitioner committed "the prohibited act of Possession of a hazardous tool." *Id.* at 4. This decision was based on Officer Krzewska's written statement, Petitioner's testimony, the testimony of Petitioner's witness, and the photograph depicting a black Samsung cellular telephone found during the search of Petitioner's "assigned room/Cell/Living Area." *Id*.

The DHO explained his decision as follows:

> The DHO considered your statement, and denial of committing the prohibited act described in Section 11, however feels you are providing the DHO with some inaccurate information. The DHO feels your witness provided the DHO with inaccurate information in order for you [to] not accept responsibility for your actions. You were not able to provide the DHO with any significant evidence to corroborate your claim of the reporting staff members were [sic] not being truthful in reference to you[r] possession [of] a hazardous tool, as reported in the section 11 narrative of the incident report and photo of the hazardous tool. Based upon the reporting staff members' eyewitness account of your behavior, your observed/reported behavior/actions met the threshold for possession of a hazardous tool as described above. The DHO gave greater weight to the staff members' eyewitness account of the incident. Based on the evidence submitted in reference to this incident report, your reported actions met the threshold for possession of hazardous tool phone as described above.

*Id.* at 4; *see also id.* (finding Petitioner "was unable to provide the DHO with any significant/credible evidence to corroborate [his] claim of not utilizing a hazardous tool while at FCI Fort Dix, New Jersey").

The DHO disallowed 41 days of good conduct time and imposed a $500 fine and 365 days' loss of visiting privileges, determining that these sanctions were appropriate because "[p]ossessing a hazardous tool significantly threatens the health, safety and welfare, of not only of [Petitioner], but of all persons" at FCI Fort Dix. *Id*. The DHO explained that "[p]ast evidence has shown that disruptive conduct has led to serious damage to the institution, as well as serious injury to staff and inmates involved and not involved in the disruptive conduct." *Id.* at 5.

Petitioner was provided a copy of the report on July 2, 2020, and was advised that he had the right to appeal within 20 days. *Id*. Respondent does not dispute that Petitioner thereafter exhausted his administrative remedies. *See* ECF No. 5 at 7 ("According to a review of the BOP records, Petitioner has exhausted his available administrative remedies at the regional and national levels relating to the DHO's finding."); ECF No. 5-3 (Decl. of Federal Bureau of Prisons ("BOP") Legal Assistant Corrie Dobovich) at 2–3 ¶ 7 ("Administrative remedy records reveal on June 15, 2021, Petitioner exhausted his remedies with respect to the instant disciplinary proceeding . . . .") (citing ECF No. 5-4 at 9–12 (Administrative Remedy Generalized Retrieval document for Petitioner)).

### B. The Habeas Petition

Petitioner, proceeding pro se, filed this § 2241 petition in December 2021. ECF No. 1. He argues that the disciplinary process described above violated "basic tenets of due process described in *Wolff v. McDonnell*"; that the DHO was biased; and that "under the precedents set by prior cases, he should not have been found guilty given the circumstantial evidence against him." *Id.* at 3–4. In support, he reiterates the following statement that he asserted in his regional administrative remedy appeal:

> The cell phone found in Cell 322 is not mine. I was asleep in bed after being medicated after a visit to dental. I saw nobody come into my area by my bed because I was asleep . . . . Whoever placed the phone there I cannot identify because I was sleeping. I share the room with 11 others, and my bed is next to the door to the cell. When the staff cleared the floor for a shakedown I was asleep, so I saw nobody enter my room or my area. I always keep my locker locked because it is common for inmates to discard items in areas that will not tie them to contraband. The staff must have unlocked my locker to gain access as I keep my area neat and clean and always locked.

*Id*.

5

Respondent answered the petition in April 2022, arguing that the Court should deny the petition because (1) "the DHO's determination that Petitioner violated Code 108 is entitled to deference and was supported by more than 'some evidence,' the applicable standard" (ECF No. 5 at 8–11); and (2) the disciplinary hearing process complied with due process requirements (*id.* at 11–14).

Petitioner replied in May 2022, arguing that "[b]ecause of the unrestricted access to the phone's location,"—i.e., "the <u>outside</u> of Petitioner's locker"—"there is no firm evidence to support that the contraband was in the Petitioner's possession." ECF No. 6 at 2 (emphasis in original). Petitioner contends that because the phone was "found in a space shared by 12, accessible by 300+ inmates," it "cannot be tied to [him]." *Id.* at 3.

For the reasons that follow, the Court will deny the petition.

### III. DISCUSSION

#### A. Applicable Law

"Federal prisoners have a liberty interest in statutory good time credits." *Campbell v. Warden Allenwood USP*, 808 F. App'x 70, 72 (3d Cir. 2020) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974); 18 U.S.C. § 3624(b)(1); *Vega v. United States*, 493 F.3d 310, 314 n.4 (3d Cir. 2007)). Thus, a prison disciplinary hearing that may result in the loss of good conduct time must provide the following due process safeguards:

> (1) at least twenty-four hours of advance written notice of the charges, (2) an opportunity to call witnesses and present documentary evidence, (3) assistance from an inmate representative if the charge involves complex issues or if the prisoner is illiterate, and (4) a written decision explaining the evidence relied upon and the reasons for the disciplinary action."

*Campbell*, 808 F. App'x at 72 (citing *Wolff*, 418 U.S. at 563–67). "Technical errors, such as a failure to meet the requirements of standard BOP procedure, will not provide a basis for habeas relief, and any alleged denial of [d]ue [p]rocess will suffice to overturn a disciplinary proceeding

6

only where those errors were, in fact, prejudicial." *Jones v. Merendino*, No. 23-89, 2023 WL 8295274, at *2 (D.N.J. Dec. 1, 2023) (citing *Millhouse v. Bledsoe*, 458 F. App'x 200, 203 (3d Cir. 2012); *Wilson v. Ashcroft*, 350 F.3d 377, 380–81 (3d Cir. 2003)).

Inmates are also entitled to a "proceeding before an impartial decision-making body." *Campbell*, 808 F. App'x at 72. To that end, "due process is satisfied as long as no member of the disciplinary board has been involved in the investigation or prosecution of the prisoner's case." *Redding v. Holt*, 252 F. App'x 488, 491 (3d Cir. 2007) (citing *Wolff*, 418 U.S. at 592)); *see also Greer v. Hogston*, 288 F. App'x 797, 799 (3d Cir. 2008) ("the requirement of an impartial tribunal prohibits only those officials who have a direct personal or otherwise substantial involvement . . . in the circumstances underlying the charge from sitting on the disciplinary body") (quoting *Meyers v. Alldredge*, 492 F.2d 296, 306 (3d Cir. 1974).

"Where a prisoner's rights have been respected, a prison disciplinary finding will stand on habeas review so long as it is supported by 'some evidence in the record.'" *Jones*, 2023 WL 8295274, at *2 (quoting *Campbell*, 808 F. App'x at 72). This standard "is minimal and 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence." *Id.* (quoting *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985)).

### B. Analysis

Petitioner contends that his due process rights were violated because (1) he was found guilty "in violation of the basic tenets of due process described in *Wolff v. McDonnell*" and (2) the DHO was biased. ECF No. 1 at 3. Petitioner also appears to argue that the evidence does not support the DHO's determination that Petitioner possessed a cell phone because the phone in

7

question was found on the outside of his locker, which he describes as "a common area accessible by all inmates at all times." ECF No. 6 at 2. The Court rejects these arguments.

First, the claim that the DHO was not impartial is without merit. As explained above, "due process is satisfied as long as no member of the disciplinary board has been involved in the investigation or prosecution of the prisoner's case." *Redding*, 252 F. App'x at 491 (citing *Wolff*, 418 U.S. at 592). Petitioner has made no allegation and presented no evidence that the DHO was involved in the investigation or prosecution of his case, and has therefore failed to demonstrate impartiality on the part of the DHO. *See, e.g.*, *Wall v. Bledsoe*, No. 10-0159, 2011 WL 810174, at *1 (M.D. Pa. Mar. 2, 2011) ("Petitioner is entitled to an impartial disciplinary tribunal, which excludes only those officials who have direct personal involvement in the circumstances underlying the charge.") (citations omitted); *Ali v. Nash*, No. 05-3205, 2006 WL 932341, at *6 (D.N.J. Apr. 11, 2006) (rejecting petitioner's bias claim where "the DHO was not involved in the investigation or circumstances underlying the charge," and there was "nothing in the record to support [Petitioner's] general contention that the DHO was not fair or impartial, or abused his authority during the disciplinary proceedings").

To the extent Petitioner argues that the DHO's determination that the evidence before him supported the charge is evidence that the DHO was biased, the argument fails. A "claim of general of bias" does not amount to "direct personal or otherwise substantial involvement . . . in the circumstances underlying the charge," sufficient to demonstrate partiality. *Lewis v. Canaan*, 664 F. App'x 153, 156 (3d Cir. 2016) (internal quotation marks omitted); *see also Jacques v. Ortiz*, No. 20-1559, 2022 WL 392858, at *9 (D.N.J. Feb. 9, 2022) ("Petitioner appears to allege that the DHO's fact finding decisions show that the DHO was biased. . . . Petitioner's 'evidence' in support of this claim are merely his disagreements and displeasure with the DHO's reasoning

8

and decisions. . . . [T]he DHO considered Petitioner's evidence and did not assign it as much weight as Petitioner believed was appropriate. Accordingly, Petitioner has failed to demonstrate that the DHO was not impartial, and Petitioner is not entitled to habeas relief on this claim.") (citations omitted); *Rodriguez v. Ebbert*, No. 15-1815, 2016 WL 3457175, at *3 (M.D. Pa. June 20, 2016) (a "'generalized critique' of [DHO] impartiality is insufficient to demonstrate the degree of bias necessary to prove a due process violation"). Thus, Petitioner's claim that he was denied due process on the basis that the DHO was biased must be rejected.

Second, Petitioner's claim that his disciplinary proceedings failed to satisfy the due process safeguards outlined in *Wolff v. McDonnell* is also without merit. Petitioner received notice of the charges two days after the incident, was provided an opportunity to request witnesses and present evidence, and declined a staff representative. ECF No. 5-2 at 2. He received a preliminary hearing before the UDC (*id.* at 8), and a final hearing before an impartial DHO (*id.* at 2–5), and was provided a statement of reasons for the DHO's decision (*id.* at 4). *See Wolff*, 418 U.S. at 563–67 (requiring an impartial decision-maker, advance notice in writing of the charges, an opportunity to call witnesses and present evidence, assistance from an inmate representative, and a written decision). Thus, Petitioner received the procedural protections which he was due. *See Jones v. Merendino*, No. CV 23-89, 2023 WL 8295274, at *3 (D.N.J. Dec. 1, 2023) ("Petitioner clearly received notice of the charges the day after the incident, was provided an opportunity to request witnesses and submit statements by his proposed witnesses, as well as his own statement, and declined a staff representative. He received a preliminary hearing before the UDC, and a final hearing before a DHO, and was provided a statement of reasons for the DHO's decision. Thus, Petitioner received all of the procedural protections to which he is due, and his Due Process rights were not violated during the prison disciplinary

9

proceedings"); *Bacon v. Ortiz*, No. 19- 11023, 2021 WL 1138137, at *4 (D.N.J. Mar. 25, 2021) (DHO hearing met the *Wolff* requirements where: "Petitioner received notice of the charges . . . the same day the incident report was written. The next day, as evidenced by his signature on both documents, Petitioner received a DHO Hearing Notice and a Notice of Inmate Rights. Petitioner waived his right to have witnesses or a staff representative present. Six days later, . . . Petitioner attended the DHO hearing, where he was again read his rights and verbally waived his right to call witnesses or request a staff representative. Based on the evidence in the record – the incident report, Petitioner's statement, an officer memorandum, and photos of the cell phone – the DHO determined that Petitioner possessed the cell phone and imposed sanctions accordingly.") (citations omitted).

Turning to the decision of the DHO, the Court finds that his determination Petitioner committed the prohibited act of "Possession of a Hazardous Tool" (ECF No. 5-2 at 4) was supported by "some evidence." *Hill*, 472 U.S. at 447; *see also* id. at 455–56 ("The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact."); *Denny v. Schultz*, 708 F. 3d 140, 140 (3d Cir. 2012) ("a reviewing court need only find that the DHO's decision had 'some basis in fact' in order to affirm the decision as comporting with the Due Process Clause") (quoting *Hill*, 472 U.S. at 455–56). Specifically, in finding that Petitioner possessed a cell phone, the DHO found credible Officer Krzewska's statement that: (1) "during the search of locker 6 Lower, he discovered a black Samsung Smartphone "magnetized to the bottom of the locker"; (2) he "identified the locker's owner"—Petitioner—"by multiple prescription medications [he] found inside of the locker 6 Lower during the search" and by "utilizing Sentry and the Unit's Bed Book Roster"; and (3) "the inmate's A&O handbook . . . states it is the inmate's responsibility to keep

10

their area free of all contraband." ECF No. 5-2 at 4. The DHO did not find Petitioner's denial credible, and noted his concern that Petitioner was "unable to provide the DHO with any significant/credible evidence to corroborate [his] claim of not utilizing a hazardous tool while at FCI Fort Dix, New Jersey." *Id*.

In support of his argument that the DHO erred by imputing possession of the cellphone to him because he shared his room with eleven other inmates, Petitioner relies on *Cardenas v. Wigen*, 921 F. Supp. 286 (E.D. Pa. 1996). In that case, a routine search of a room at FCI Fort Dix revealed a "a five-inch sharpened metal rod with a two-inch taped handle attached to the end along with a quart of nickel grey paint in the common area shared by [three] Petitioners and nine other inmates." *Id.* at 288. "Although there was no direct evidence that any individual inmate was responsible for the forbidden materials, Petitioners and their cellmates were adjudged guilty of" violating prison Codes 104 ("Possession of a Sharpened Instrument or Weapon") and 305 ("Possession of Anything Not Authorized"). *Id.* The district court ultimately denied habeas relief because it found that the discipline did not implicate the prisoners' liberty interests, but it opined, in a footnote, that it could not say "that there was 'some evidence' to support the disciplinary board's decision that Petitioners were guilty of the violations charged" because (1) there was "no direct evidence on the record linking any of the Petitioners to the contraband," and (2) "the basis for the disciplinary board rulings . . . was derived solely from application of the constructive possession doctrine." *Id.* at 289 n.4.

In contrast, here, the contraband was found not in a common area, but magnetized to the bottom of Petitioner's locker. Although another inmate possibly could have attached his own cell phone to the bottom of Petitioner's locker, Petitioner does not dispute that the locker was assigned to him, nor does he dispute that it was prison policy to require inmates to keep their

assigned areas free of contraband. Accordingly, there was "some evidence"—a "minimal" standard, *Jones*, 2023 WL 8295274, at *2—upon which to find Petitioner guilty of possession of a hazardous tool. *Desposito v. Warden, FCI Fort Dix*, No. 22-2487, 2023 WL 6211994, at *7 (D.N.J. Sept. 25, 2023) ("Discovery of the contraband under Petitioner's assigned mattress in a twelve-man room, in combination with the prison policy that inmates are responsible for keeping their areas free from contraband, provides some basis in fact for the DHO to find Petitioner guilty of violating Code 113.").

This conclusion is supported by decisions of other courts, which have found, in similar circumstances, that attributing possession to a prisoner who is found to have contraband affixed to his furniture meets the "some evidence" standard. *See Donahue v. Grondolsky*, 398 F. App'x 767, 773 (3d Cir. 2010) (finding "some evidence" standard was met where numerous inmates had access to dorm room, and contraband was found taped to the bottom of the petitioner's clothes drawer); *Santiago v. Nash*, 224 F. App'x 175, 177 (3d Cir. 2007) (finding sufficient evidence of possession of contraband found taped to the frame of the petitioner's bunk, an area the petitioner was responsible for keeping contraband-free); *Rodriguez v. Lindsay*, 498 F. App'x 70, 72 (2d Cir. 2012) (finding an inmate's bunk, although in an open dormitory where 120 inmates had access, was not a "common area" but instead a personal living space where the inmate was responsible for keeping it free from contraband); *Salvador v. N'Diaye*, No. 22-653, 2023 WL 3720847, at *3 (D.N.J. May 30, 2023) ("Regardless of whether Petitioner himself brought the phone into the cell, or placed it into the seam himself, he was responsible for keeping the area free of contraband, and that the phone was discovered in a shared area of his cell in exceedingly close proximity to his locker is more than sufficient evidence to support the DHO's finding of guilt. As there clearly was 'some evidence' of Petitioner's guilt of possession of the

prohibited cell phone based on the undisputed fact that the phone was found in a concealed area directly beside Petitioner's locker, the disciplinary infractions against him will stand, and Petitioner has failed to show an adequate basis for habeas relief."); *Szczerba v. Warden, Ft. Dix, NJ*, No. 19-19932, 2022 WL 17976823, at *5 (D.N.J. Dec. 28, 2022) ("[I]t was Petitioner's responsibility to keep his assigned locker within his assigned cell free from contraband, despite the fact that other inmates had access to the locker. Therefore, some evidence supported the DHO's finding that Petitioner possessed the SD card found in his locker.") (citations omitted); *Jackson v. Ortiz*, No. 19-10957, 2020 WL 1466804, at *4-5 (D.N.J. Mar. 26, 2020) (finding that "some evidence" supported DHO decision that cell phone attached to underside of bunk belonged to petitioner, as "this Court need not consider how many inmates had access to the underside of Petitioner's bunk"); *Williams v. Werlinger*, No. 10-060, 2011 WL 13196476, at *3 (W.D. Pa. May 12, 2011), aff'd, 451 F. App'x 127 (3d Cir. 2011) ("Here the weapon was found under Williams' bunk, not in a common area, and although other inmates obviously had access to this location it is improbable that every inmate having access is equally likely to have committed the offense").

Accordingly, as (1) Petitioner has failed to establish a violation of his due process rights during his disciplinary proceedings and (2) the DHO's finding that Petitioner violated Code 108 by possessing a cell phone was supported by "some evidence," the petition will be denied.

**IV.   CONCLUSION**

For the foregoing reasons, Petitioner's habeas petition (ECF No. 1) is denied. An appropriate order will follow.

Dated: January 9, 2024                                    s/ Robert B. Kugler
                                                          HON. ROBERT B. KUGLER
                                                          United States District Judge

13